## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA<br>d/b/a Hospital of the University of Pennsylvania<br>3400 Spruce Street<br>Philadelphia, PA 19104<br><br>and<br><br>PRESBYTERIAN MEDICAL CENTER OF THE UNIVERSITY OF PENNSYLVANIA HEALTH SYSTEM<br>d/b/a Penn Presbyterian Medical Center<br>51 N. 39th Street<br>Philadelphia, PA 19104<br><br>and<br><br>THE PENNSYLVANIA HOSPITAL OF THE UNIVERSITY OF PENNSYLVANIA HEALTH SYSTEM<br>d/b/a Pennsylvania Hospital<br>800 Spruce Street<br>Philadelphia, PA 19107<br><br>and<br><br>UPMC MAGEE-WOMENS HOSPITAL<br>d/b/a Magee-Womens Hospital of UPMC<br>300 Halket Street<br>Pittsburgh, PA 15213<br><br>and<br><br>UPMC PRESBYTERIAN SHADYSIDE<br>200 Lothrop Street<br>Pittsburgh, PA 15213<br><br>and<br><br>HIGHLAND HOSPITAL OF ROCHESTER<br>1000 South Avenue<br>Rochester, NY 14620 | Case No. <u>1:20-cv-3506</u> |

and

STRONG MEMORIAL HOSPITAL
601 Elmwood Avenue
Rochester, New York 14642

and

HMH HOSPITALS CORPORATION
d/b/a Hackensack University Medical Center
30 Prospect Avenue
Hackensack, NJ 07601

and

HMH HOSPITALS CORPORATION
d/b/a Jersey Shore University Medical Center
1945 Corlies Avenue
Neptune, NJ 07753

and

KECK MEDICAL CENTER OF USC
d/b/a Keck Hospital of USC
1500 San Pablo Street
Los Angeles, CA 09933

and

MAIMONIDES MEDICAL CENTER
4802 Tenth Avenue
Brooklyn, New York 11219

and

MIAMI VALLEY HOSPITAL
1 Wyoming Street
Dayton, OH 45409

and

SAINT LUKE'S HOSPITAL OF BETHLEHEM,
PENNSYLVANIA
d/b/a St. Luke's Hospital
801 Ostrum Street
Bethlehem, PA 18015

2

and

ALBERT EINSTEIN MEDICAL CENTER
5501 Old York Road
Philadelphia, PA 19141

and

WEST VIRGINIA UNIVERSITY HOSPITALS,
INC.
d/b/a WVU Hospitals
d/b/a J.W. Ruby Memorial Hospital
Medical Center Drive
Morgantown, WV 26506

                              Plaintiffs,

        vs.

ALEX M. AZAR II,
in his official capacity as
Secretary of the United States Department of
Health and Human Services
200 Independence Avenue, SW
Washington, DC 20201

                              Defendant.

## COMPLAINT FOR JUDICIAL REVIEW AND DECLARATORY RELIEF AND SUMS DUE UNDER THE MEDICARE STATUTE

### INTRODUCTION

1.      This is a civil action brought to obtain judicial review of agency decisions regarding

Medicare reimbursements rendered by Alex M. Azar II (the "Secretary" or "Defendant") in his

official capacity as the Secretary of the United States Department of Health and Human Services.

Plaintiffs are hospitals that participate in the Medicare program and qualify under the Medicare

program for direct graduate medical education ("DGME") payments for training medical residents.

Plaintiffs seek an order setting aside the Secretary's regulation at 42 C.F.R. § 413.79(c)(2)(iii),

which unlawfully reduces Plaintiffs' DGME payments by decreasing the number of residents that Plaintiffs may claim during a fiscal year.

2.      Plaintiffs operate approved medical training programs for physician residents and fellows (collectively "residents").  Plaintiffs receive Medicare DGME payments, which are calculated, in part, based on the number of full-time equivalent ("FTE") residents that train at each hospital.  If a resident exceeds the number of years designated as the "initial residency period" ("IRP"), the resident's time is weighted at 0.5, which means that the hospital may only count one-half of the resident's time that exceeds the IRP.  Also, the number of FTEs that a hospital may claim for payment in any given year is generally capped at the number of *unweighted* FTEs that it trained in its 1996 fiscal year.

3.      The regulation at 42 C.F.R. § 413.79(c)(2)(iii) is contrary to the Medicare statute because it calculates a hospital's DGME payments using a weighted FTE cap rather than an unweighted FTE cap.  42 U.S.C. § 1395ww(h)(4)(F).  The effect of the unlawful regulation is to impose on Plaintiffs a weighting factor on residents that are within their IRP or, viewed differently, results in a reduction of greater than 0.5 for many residents who are beyond the IRP, which prevents Plaintiffs from claiming their full FTE caps authorized by statute.  Thus, the calculations of the current-year, prior-year, and penultimate-year weighted DGME FTEs (all three of which are elements of a hospital's DGME calculation in a given year) and the FTE caps are contrary to the statutory provision at 42 U.S.C. § 1395ww(h), and, as a result, Plaintiffs' DGME payments are unlawfully understated.

4.      The Secretary's application of this regulation violates the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.* (2012) (the "APA"); is contrary to the Medicare statute; is arbitrary, capricious, and an abuse of discretion; and otherwise contrary to law.  Accordingly, Plaintiffs ask

this Court to reverse the Secretary's final agency decisions and to order the Secretary to recalculate Plaintiffs' DGME payments as required by statute.

## JURISDICTION AND VENUE

5.      This action arises under Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.* (2012) (the "Medicare statute"), which establishes the Medicare program, and the APA.

6.      This Court has jurisdiction under 42 U.S.C. § 1395oo(f)(1), which grants Medicare providers the right to obtain expedited judicial review ("EJR") of any action involving "a question of law or regulations relevant to the matters in controversy" when the Secretary's Provider Reimbursement Review Board (the "Board") "determines . . . that it is without authority to decide the question, by a civil action commenced within sixty days of the date on which notification of such determination is received."  The Board granted EJR to Plaintiffs in decisions dated January 8, 2020 and January 14, 2020.  Accordingly, this action is timely filed within the sixty-day limitations period established at 42 U.S.C. § 1395oo(f)(1).  Plaintiffs have exhausted all administrative remedies prior to commencing this action.

7.      Venue in this Court is proper under 42 U.S.C. § 1395oo(f)(1).

## PARTIES

8.      Plaintiff Hospital of the University of Pennsylvania is an academic medical center located in Philadelphia, Pennsylvania that participates in the Medicare program and has been assigned Medicare Provider Number 39-0111.  Hospital of the University of Pennsylvania operates graduate medical education programs and receives Medicare DGME payments.  Hospital of the University of Pennsylvania contests the Medicare reimbursement decisions for its fiscal years ending June 30, 2015 and June 30, 2018.

9.      Plaintiff Penn Presbyterian Medical Center is an academic medical center located in Philadelphia, Pennsylvania that participates in the Medicare program and has been assigned Medicare Provider Number 39-0223.  Penn Presbyterian Medical Center operates graduate medical education programs and receives Medicare DGME payments.  Penn Presbyterian Medical Center contests the Medicare reimbursement decisions for its fiscal years ending June 30, 2015 and June 30, 2018.

10.     Plaintiff Pennsylvania Hospital is an academic medical center located in Philadelphia, Pennsylvania that participates in the Medicare program and has been assigned Medicare Provider Number 39-0226.  Pennsylvania Hospital operates graduate medical education programs and receives Medicare DGME payments.  Pennsylvania Hospital contests the Medicare reimbursement decisions for its fiscal years ending June 30, 2015 and June 30, 2018.

11.     Plaintiff Magee-Womens Hospital of UPMC is an academic medical center located in Pittsburgh, Pennsylvania that participates in the Medicare program and has been assigned Medicare Provider Number 39-0114. Magee-Womens Hospital of UPMC operates graduate medical education programs and receives Medicare DGME payments.  Magee-Womens Hospital of UPMC contests the Medicare reimbursement decision for its fiscal year ending June 30, 2016.

12.     Plaintiff UPMC Presbyterian Shadyside is an academic medical center located in Pittsburgh, Pennsylvania that participates in the Medicare program and has been assigned Medicare Provider Number 39-0164.  UPMC Presbyterian Shadyside operates graduate medical education programs and receives Medicare DGME payments. UPMC Presbyterian Shadyside contests the Medicare reimbursement decisions for its fiscal years ending June 30, 2015 and June 30, 2016.

13.     Plaintiff Highland Hospital of Rochester is an academic medical center located in Rochester, New York that participates in the Medicare program and has been assigned Medicare Provider Number 33-0164.  Highland Hospital of Rochester operates graduate medical education programs and receives Medicare DGME payments.  Highland Hospital of Rochester contests the Medicare reimbursement decision for its fiscal year ending June 30, 2015.

14.     Plaintiff Strong Memorial Hospital is an academic medical center located in Rochester, New York that participates in the Medicare program and has been assigned Medicare Provider Number 33-0285.  Strong Memorial Hospital operates graduate medical education programs and receives Medicare DGME payments.  Strong Memorial Hospital contests the Medicare reimbursement decision for its fiscal year ending June 30, 2015.

15.     Plaintiff Hackensack University Medical Center is an academic medical center located in Hackensack, New Jersey that participates in the Medicare program and has been assigned Medicare Provider Number 31-0001.  Hackensack University Medical Center operates graduate medical education programs and receives Medicare DGME payments.  Hackensack University Medical Center contests the Medicare reimbursement decisions for its fiscal years ending December 31, 2015 and December 31, 2016.

16.     Plaintiff Jersey Shore University Medical Center is an academic medical center located in Neptune, New Jersey that participates in the Medicare program and has been assigned Medicare Provider Number 31-0073.  Jersey Shore University Medical Center operates graduate medical education programs and receives Medicare DGME payments.  Jersey Shore University Medical Center contests the Medicare reimbursement decisions for its fiscal years ending December 31, 2015 and December 31, 2016.

17.     Plaintiff Keck Hospital of USC is an academic medical center located in Los Angeles, California that participates in the Medicare program and has been assigned Medicare Provider Number 05-0696.  Keck Hospital of USC operates graduate medical education programs and receives Medicare DGME payments.  Keck Hospital of USC contests the Medicare reimbursement decisions for its fiscal years ending September 30, 2015 and 2016.

18.     Plaintiff Maimonides Medical Center is an academic medical center located in Brooklyn, New York that participates in the Medicare program and has been assigned Medicare Provider Number 33-0194.  Maimonides Medical Center operates graduate medical education programs and receives Medicare DGME payments.  Maimonides Medical Center contests the Medicare reimbursement decisions for its fiscal years ending December 31, 2015, 2016, and 2018.

19.     Plaintiff Miami Valley Hospital is an academic medical center located in Dayton, Ohio.  Miami Valley Hospital participates in the Medicare program and has been assigned Medicare Provider Number 36-0051.  Miami Valley Hospital operates graduate medical education programs and receives Medicare DGME payments.  Miami Valley Hospital contests the Medicare reimbursement decision for its fiscal year ending December 31, 2010.

20.     Plaintiff St. Luke's Hospital is an academic medical center located in Bethlehem, Pennsylvania that participates in the Medicare program and has been assigned Medicare Provider Number 39-0049.  St. Luke's Hospital operates graduate medical education programs and receives Medicare DGME payments.  St. Luke's Hospital contests the Medicare reimbursement decisions for its fiscal years ending June 30, 2015 and June 30, 2016.

21.     Plaintiff Albert Einstein Medical Center is an academic medical center located in Philadelphia, Pennsylvania that participates in the Medicare program and has been assigned Medicare Provider Number 39-0142.  Albert Einstein Medical Center operates graduate medical

education programs and receives Medicare DGME payments.  Albert Einstein Medical Center contests the Medicare reimbursement decisions for its fiscal years ending June 30, 2012, 2013, 2015, 2016, and 2018.

22.     Plaintiff WVU Hospitals is an academic medical center located in Morgantown, West Virginia that participates in the Medicare program and has been assigned Medicare Provider Number 51-0001.  WVU Hospitals operates graduate medical education programs and receives Medicare DGME payments.  WVU Hospitals contests the Medicare reimbursement decision for its fiscal year ending December 31, 2016.

23.     Defendant Alex M. Azar II is the Secretary of the Department of Health and Human Services and is the federal officer responsible for administering the Medicare program pursuant to the Social Security Act.  Defendant is sued in his official capacity. References to "Defendant" or "Secretary" herein are meant to refer to him, his subordinates, his official predecessors or successors, and the Department and its components that he oversees, as the context requires.

## BACKGROUND

### I.     The Medicare Program and Payment for Hospital Services

24.     Medicare is a public health insurance program that generally furnishes health benefits to participating individuals once they reach the age of 65.  42 U.S.C. § 1395c.  The Secretary has delegated much of the responsibility for administering the Medicare program to the Centers for Medicare and Medicaid Services ("CMS"), which is a component of the Department of Health and Human Services.

25.     Under the Medicare statute, an eligible Medicare beneficiary is entitled to have payment made by Medicare on his or her behalf for, *inter alia*, inpatient and outpatient hospital services provided by a hospital participating in the Medicare program as a provider of health care

services.  *Id.*  The Medicare program consists of four Parts:  A, B, C, and D.  Inpatient hospital services are paid under Part A of the Medicare statute.  *Id.* § 1395d(a).  Physician, hospital outpatient, and certain other services are paid under Medicare Part B.  *Id.* § 1395k(a).  Medicare Part C is an optional managed care program that pays for services that would otherwise be covered under Medicare Parts A and B.  *Id.* §§ 1395w-21–1395w-29.  Medicare Part D is an optional insurance program for prescription drugs.  *Id.* §§ 1395w-101–1395w-154.  This action concerns Medicare Part A.

## II.    Direct Graduate Medical Education

26.    The Medicare statute reimburses hospitals for the direct costs of graduate medical education.  42 U.S.C. § 1395ww(h).  The DGME payment is calculated by multiplying a hospital's "patient load" times its "approved amount."  42 U.S.C. § 1395ww(h)(3)(A).  The "patient load" is "the fraction of the total number of inpatient-bed-days . . . during the period which are attributable to patients with respect to whom payment may be made under [Medicare] part A."  42 U.S.C. § 1395ww(h)(3)(C).  The "approved amount" is the product of a hospital's base-period per-resident amount ("PRA") and its weighted average number of FTE residents.  *Id.* § 1395ww(h)(3)(B); 42 C.F.R. § 413.76(a).  The weighted average number of FTEs is calculated using the average of "the actual full-time equivalent resident counts for the cost reporting period and the preceding two cost reporting periods."  42 U.S.C. § 1395ww(h)(4)(G).  This action concerns the FTE component of the DGME payment calculation.  The following is the basic formula for calculating a hospital's DGME payment:

**PRA x (3-year FTE average) x (Medicare Patient Load) = DGME Payment**

27.    When determining the FTE count, residents who are beyond their IRP are weighted at 0.5, so that only half their time is counted.  *Id.* § 1395ww(h)(4)(C).  The IRP is defined as the

period necessary for board eligibility in the resident's training program, not to exceed five years. *Id.* § 1395ww(h)(5)(F). Most, though not all, residents who are beyond the IRP are participating in post-residency fellowship programs.

28.    For cost reporting periods beginning on or after October 1, 1997, Congress established a cap on the number of *unweighted* DGME FTEs that a hospital may count, which is set at each hospital's number of unweighted FTEs during its most recent fiscal year that ended on or before December 31, 1996. *Id.* § 1395ww(h)(4)(F).[1] Thus, a hospital's three-year FTE average in the DGME formula is limited by the number of unweighted FTEs that the hospital trained in its 1996 cost reporting period. The FTE cap is determined "before application of weighting factors" based on the IRP. *Id.* § 1395ww(h)(4)(F)(i).

29.    In 1997, the Secretary promulgated a regulation to implement the 1996 cap that calculates a *weighted* FTE cap to be used in the payment calculation:

> If the hospital's number of FTE residents in a cost reporting period beginning on or after October 1, 1997, exceeds the limit described in this paragraph (g) [i.e., the 1996 unweighted cap], the hospital's weighted FTE count (before application of the limit) will be reduced in the same proportion that the number of FTE residents for that cost reporting period exceeds the number of FTE residents for the most recent cost reporting period ending on or before December 31, 1996.

42 .F.R. § 413.86(g)(4) (1997).

30.    When issuing this regulation, the Secretary stated, "We believe this proportional reduction in the hospital's unweighted FTE count is an equitable mechanism for implementing the statutory provision." Medicare Program; Changes to the Hospital Inpatient Prospective Payment Systems and Fiscal Year 1998 Rates, 62 Fed. Reg. 45,966, 46,005 (Aug. 29, 1997) (final rule with comment period); Medicare Program; Changes to the Hospital Inpatient

---

[1] This cap is subject to limited adjustment under certain other statutory provisions, however such adjustments do not impact the method of calculating DGME payment.

Prospective Payment Systems and Fiscal Year 1998 Rates, 63 Fed. Reg. 26,318, 26,330 (May

12, 1998) (final rule) (hereinafter "FY 1998 IPPS Rule").

31.     On August 1, 2001, the Secretary amended the regulation to determine separate

weighted FTE caps for primary care residents and non-primary care residents, effective for cost

reporting periods beginning on or after October 1, 2001.  42 C.F.R. § 413.86(g)(4)(iii) (2001);

Medicare Program; Changes to the Hospital Inpatient Prospective Payment Systems and Rates

and Costs of Graduate Medical Education: Fiscal Year 2002 Rates, 66 Fed. Reg. 39,828, 39,893-

96 (Aug. 1, 2001) (hereinafter the "FY 2002 IPPS Rule").  The Secretary did not change the

formula for determining the weighted FTE cap.  Rather, the Secretary used the same

methodology as in the 1997 rule to calculate a primary care weighted FTE cap and a non-primary

care weighted FTE cap, which are then added together.  42 C.F.R. § 413.86(g)(4)(iii); FY 2002

IPPS Rule, 66 Fed. Reg. at 39,894.

32.     In 2004, CMS redesignated the regulation from 42 C.F.R. § 413.86(g)(4)(iii) to 42

C.F.R. § 413.79(c)(2)(iii).  Medicare Program; Changes to the Hospital Inpatient Prospective

Payment Systems and Fiscal Year 2005 Rates, 46 Fed. Reg. 48,916, 49,112, 49,258-64 (Aug. 11,

2004).

33.     The regulation in effect during all fiscal years at issue in this action states as

follows:

> If the hospital's number of FTE residents in a cost reporting period beginning on
> or after October 1, 2001 exceeds the limit described in this section [i.e., the 1996
> unweighted cap], the hospital's weighted FTE count (before application of the
> limit) for primary care and obstetrics and gynecology residents and nonprimary
> care residents, respectively, will be reduced in the same proportion that the number
> of FTE residents for that cost reporting period exceeds the number of FTE residents
> for the most recent cost reporting period ending on or before December 31, 1996.

42 C.F.R. § 413.79(c)(2)(iii) (2010-2017).  This regulation is still in effect today.

34.     The Secretary's regulation at 42 C.F.R. § 413.79(c)(2)(iii) calculates the ratio of a

hospital's unweighted FTE cap to the hospital's current-year unweighted FTE count.  42 C.F.R. § 413.79(c)(2)(ii)-(iii) (the "proportion that the number of FTE residents for that cost reporting period exceeds the number of FTE residents for the most recent cost reporting period ending on or before December 31, 1996").  This ratio represents the percentage by which the hospital's 1996 cap is above or below the current-year unweighted FTE count.  The ratio is then multiplied by the current-year weighted FTE count (both residents within and beyond their IRP) to reduce the weighted count.  *Id.*  The resulting number is the weighted FTE cap.  The Secretary's methodology is expressed in the following equation:

**(1996 FTE Cap)/(Unweighted FTEs) x Weighted FTEs = Weighted FTE Cap**

The Secretary describes the result of this formula as "the hospital's reduced cap."  FY 2002 IPPS Rule, 66 Fed. Reg. at 39,894.

35.     The regulation calculates a hospital's DGME payment based on its weighted FTEs, which may not exceed its weighted cap.  42 C.F.R. §§ 413.76(a), 413.79(c)(2)(iii).

## III.    Medicare Cost Report Appeals

36.     At the close of a hospital's fiscal year, it is required to submit to its designated Medicare Administrative Contractor ("MAC") a "cost report" showing both the costs incurred by the hospital during the fiscal year and the appropriate share of these costs to be apportioned to Medicare.  42 C.F.R. § 413.24(f) (2018).  MACs are private companies under contract with the Secretary to pay Medicare claims and audit hospital cost reports, among other duties.  42 U.S.C. § 1395kk-1.

37.     The MAC must analyze and audit the cost report and inform the hospital of a final determination of the amount of Medicare reimbursement through a Notice of Program

Reimbursement ("NPR").  42 C.F.R. § 405.1803(a).  A hospital's DGME payment is among the components of the final payment determination reported in the NPR.

38.    A hospital that is dissatisfied with the MAC's final determination or that did not receive a timely MAC final determination has a statutory right to a hearing before the Board.  42 U.S.C. § 1395oo(a).

39.    The Board has jurisdiction over such appeals if the following requirements are met: (1) the hospital is dissatisfied with the final MAC determination or has not received a final determination from the MAC on a timely basis; (2) the amount in controversy is at least $10,000; and (3) the hospital requests a hearing within 180 days of receiving the final determination or within 180 days after such determination would have been received if it had been timely made.  *Id.*

40.    A group of hospitals may appeal a common dispute to the Board if the following requirements are met:  (1) the hospitals are dissatisfied with the final MAC determinations or have not received final determinations from the MAC on a timely basis; (2) the amount in controversy is, in the aggregate, at least $50,000; and (3) the hospitals request a hearing within 180 days of the Secretary's determinations or within 180 days after such determinations would have been received if they had been timely made.  *Id.* § 1395oo(a)-(b).  A group of hospitals may file a group appeal directly without first filing individual appeals.  *Id.* § 1395oo(b); 42 C.F.R. § 405.1837(a), (b).  A hospital may also transfer an issue from an individual appeal to a group appeal.  42 C.F.R. § 405.1837(e)(4).

41.    In addition, for group appeals, the matter at issue must involve "a single question of fact or interpretation of law, regulations, or CMS Ruling that is common to each provider in the group."  42 C.F.R. § 405.1837(a)(2).

42.     The Board lacks the authority to decide the validity of a Medicare regulation. *Id*. §
405.1867.  If a hospital (or group of hospitals) appeals an issue that involves a question that is
beyond the Board's authority, the Board may authorize EJR of the case.  42 U.S.C. § 1395oo(f)(1);
42 C.F.R. § 405.1842.

43.     The Board must grant EJR if it determines that (1) the Board does not have the
authority to decide the legal question because the question is a challenge either to the
constitutionality of a statute or to the substantive or procedural validity of a regulation or CMS
Ruling; and (2) the Board has jurisdiction to hold a hearing on the specific matter at issue.  42
U.S.C. § 1395oo(f)(1); 42 C.F.R. § 405.1842(f)(1).

44.     If the Board issues an EJR decision, the CMS Administrator has the right to "review
the Board's jurisdictional finding, but not the Board's authority determination."  42 C.F.R. §
405.1842(a)(3).  The Board's decision to grant EJR "becomes final and binding on the parties
unless the decision is reversed, affirmed, modified, or remanded by the Administrator." *Id*. §
405.1842(g)(1)(iii).  A final Board decision constitutes the final agency action of the Secretary.
42 C.F.R. § 405.1877(a)(2).

45.     If the Board grants a hospital's request for EJR, the hospital may seek judicial
review of the action involving a question of law or regulations by commencing a civil action within
sixty days of the date on which notification of the Board's EJR determination is received.   42
U.S.C. § 1395oo(f)(l); 42 C.F.R. § 405.1842(g)(2).

### FACTS SPECIFIC TO THIS CASE

46.     Plaintiffs are teaching hospitals that receive Medicare DGME payments.  Plaintiffs
all trained residents in their fiscal year 1996 ("FY 1996") cost reporting periods.  Accordingly, the

Secretary established a DGME FTE cap for each Plaintiff based on its FY 1996 resident FTE count.

47.     During the fiscal years at issue in this action, Plaintiffs' FTE counts exceeded their 1996 FTE caps.  Plaintiffs' FTE counts included residents who were both within and beyond the IRP.[2]  The Secretary employed the methodology of the regulation at 42 C.F.R. § 413.79(c)(2)(iii) when applying the FTE weighting factors to Plaintiffs' DGME FTE caps.

48.     Each Plaintiff timely filed an appeal with the Secretary's Board following the receipt of its final determination from its MAC or the MAC's failure to timely issue a final determination, pursuant to 42 U.S.C. § 1395oo(a).

49.     Plaintiffs Hospital of the University of Pennsylvania, Penn Presbyterian Medical Center, and The Pennsylvania Hospital joined group appeals contesting the application of 42 C.F.R. § 413.79(c)(2)(iii) to their fiscal years ending on June 30, 2015 and June 30, 2018, which the Board designated as case numbers 18-1458GC and 20-1602GC, respectively.  On June 17, 2020, Plaintiffs in case numbers 18-1458GC and 20-1602GC requested that the Board grant EJR on the question of the validity of the Secretary's methodology for applying the FTE caps and weighting factors as specified in 42 C.F.R. § 413.79(c)(2)(iii).  On October 6, 2020, the Board granted EJR in case numbers 18-1458GC and 20-1602GC.  The Board's EJR decision is attached as Exhibit "A."  The Board concluded that it had jurisdiction over the matter for the subject years and lacked the authority to decide the legal question of whether 42 C.F.R. § 413.79(c)(2)(iii) is valid.  *See* Exhibit A.   As of the filing of this complaint, the Board's decision has not been

---

[2] One of the Plaintiff hospitals, Highland Hospital, did not train any residents who were beyond the IRP in the fiscal year appealed, however the hospital did train residents beyond the IRP within the two years prior to the fiscal year appealed.  Because the prior year and penultimate year are averaged with the current year when calculating the DGME payment, the FTE counts for those two years have a direct impact on the hospital's reimbursement for the appealed year.

reversed, affirmed, modified, or remanded by the Administrator. The Board's October 6, 2020 EJR decision constitutes the Secretary's final agency action in Board case numbers 18-1458GC and 20-1602GC. By filing this Complaint, Hospital of the University of Pennsylvania, Penn Presbyterian Medical Center, and The Pennsylvania Hospital have timely sought appeal of the Secretary's final decision under 42 U.S.C. § 1395oo(f)(1).

50.     Plaintiffs Magee-Womens Hospital of UPMC and UPMC Presbyterian Shadyside joined a group appeal contesting the application of 42 C.F.R. § 413.79(c)(2)(iii) to their fiscal year ending on June 30, 2016, which the Board designated as case number 19-2765GC. On June 17, 2020, Plaintiffs in case number 19-2765GC requested that the Board grant EJR on the question of the validity of the Secretary's methodology for applying the FTE caps and weighting factors as specified in 42 C.F.R. § 413.79(c)(2)(iii). On October 6, 2020, the Board granted EJR in case number 19-2765GC. The Board's EJR determination is attached as Exhibit "A." The Board concluded that it had jurisdiction over the matter for the subject years and lacked the authority to decide the legal question of whether 42 C.F.R. § 413.79(c)(2)(iii) is valid. *Id.* As of the filing of this complaint, the Board's decision has not been reversed, affirmed, modified, or remanded by the Administrator. The Board's October 6, 2020 EJR decision constitutes the Secretary's final agency action in Board case number 19-2765GC. By filing this Complaint, Magee-Womens Hospital of UPMC and UPMC Presbyterian Shadyside have timely sought appeal of the Secretary's final decision under 42 U.S.C. § 1395oo(f)(1).

51.     Plaintiffs Highland Hospital of Rochester and Strong Memorial Hospital joined a group appeal contesting the application of 42 C.F.R. § 413.79(c)(2)(iii) to their fiscal years ending on June 30, 2015, which the Board designated as case number 20-0005GC. On June 17, 2020, Plaintiffs in case number 20-0005GC requested that the Board grant EJR on the question of the

validity of the Secretary's methodology for applying the FTE caps and weighting factors as specified in 42 C.F.R. § 413.79(c)(2)(iii).  On October 6, 2020, the Board granted EJR in case number 20-0005GC.  *See* Exhibit A.  The Board concluded that it had jurisdiction over the matter for the subject years and lacked the authority to decide the legal question of whether 42 C.F.R. § 413.79(c)(2)(iii) is valid.  *Id.*  As of the filing of this complaint, the Board's decision has not been reversed, affirmed, modified, or remanded by the Administrator.  The Board's October 6, 2020, EJR decision constitutes the Secretary's final agency action in Board case number 20-0005GC. By filing this Complaint, Highland Hospital of Rochester and Strong Memorial Hospital have timely sought appeal of the Secretary's final decision under 42 U.S.C. § 1395oo(f)(1).

52.     Plaintiffs Hackensack University Medical Center and Jersey Shore University Medical Center joined a group appeal contesting the application of 42 C.F.R. § 413.79(c)(2)(iii) to their fiscal years ending on December 31, 2016, which the Board designated as case number 20-1462GC.  On June 17, 2020, Plaintiffs in case number 20-1462GC requested that the Board grant EJR on the question of the validity of the Secretary's methodology for applying the FTE caps and weighting factors as specified in 42 C.F.R. § 413.79(c)(2)(iii).  On October 6, 2020, the Board granted EJR in case number 20-1462GC.  *See* Exhibit A.  The Board concluded that it had jurisdiction over the matter for the subject years and lacked the authority to decide the legal question of whether 42 C.F.R. § 413.79(c)(2)(iii) is valid.  *Id.*  As of the filing of this complaint, the Board's decision has not been reversed, affirmed, modified, or remanded by the Administrator. The Board's October 6, 2020 EJR decision constitutes the Secretary's final agency action in Board case number 20-1462GC.  By filing this Complaint, Hackensack University Medical Center and Jersey Shore University Medical Center have timely sought appeal of the Secretary's final decision under 42 U.S.C. § 1395oo(f)(1).

53.     The following Plaintiffs joined a group appeal contesting the application of 42 C.F.R. § 413.79(c)(2)(iii) to their fiscal years identified below, which the Board designated as case number 19-2187G:  Keck Hospital of USC (fiscal year ending September 30, 2015), Hackensack University Medical Center (fiscal year ending December 31, 2016), Jersey Shore University Medical Center (fiscal year ending December 31, 2015), Maimonides Medical Center (fiscal years ending December 31, 2015 and December 31, 2018), Miami Valley Hospital (fiscal year ending December 31, 2010), St. Luke's Hospital (fiscal year ending June 30, 2015), Albert Einstein Medical Center (fiscal years ending June 30, 2012, June 30, 2013, June 30, 2015, and June 30, 2018), and UPMC Presbyterian Shadyside (fiscal year ending June 30, 2015).  On June 17, 2020, Plaintiffs in case number 19-2187G requested that the Board grant EJR on the question of the validity of the Secretary's methodology for applying the FTE caps and weighting factors as specified in 42 C.F.R. § 413.79(c)(2)(iii).  On October 20, 2020, the Board granted EJR in case number 19-2187G.  *See* Exhibit B.  The Board concluded that it had jurisdiction over the matter for the subject years and lacked the authority to decide the legal question of whether 42 C.F.R. § 413.79(c)(2)(iii) is valid.  *Id.*  As of the filing of this complaint, the Board's decision has not been reversed, affirmed, modified, or remanded by the Administrator.  The Board's October 20, 2020 EJR decision constitutes the Secretary's final agency action in Board case number 19-2187G.  By filing this Complaint, Keck Hospital of USC, Hackensack University Medical Center, Jersey Shore University Medical Center, Maimonides Medical Center, Miami Valley Hospital, St. Luke's Hospital, Albert Einstein Medical Center, and UPMC Presbyterian Shadyside have timely sought appeal of the Secretary's final decision under 42 U.S.C. § 1395oo(f)(1).

54.     Plaintiffs Keck Hospital of USC, Maimonides Medical Center, St. Luke's Hospital, Albert Einstein Medical Center, and WVU Hospitals joined a group appeal contesting the

application of 42 C.F.R. § 413.79(c)(2)(iii) to their fiscal years ending in 2016, which the Board designated as case number 20-1315G.  On June 17, 2020, Plaintiffs in case number 20-1315G requested that the Board grant EJR on the question of the validity of the Secretary's methodology for applying the FTE caps and weighting factors as specified in 42 C.F.R. § 413.79(c)(2)(iii).  On October 20, 2020, the Board granted EJR in case number 20-1315G.  *See* Exhibit B.  The Board concluded that it had jurisdiction over the matter for the subject years and lacked the authority to decide the legal question of whether 42 C.F.R. § 413.79(c)(2)(iii) is valid.  *Id.*  As of the filing of this complaint, the Board's decision has not been reversed, affirmed, modified, or remanded by the Administrator.  The Board's October 20, 2020 EJR decision constitutes the Secretary's final agency action in Board case number 20-1315G.  By filing this Complaint, Keck Hospital of USC, Maimonides Medical Center, St. Luke's Hospital, Albert Einstein Medical Center, and WVU Hospitals have timely sought appeal of the Secretary's final decision under 42 U.S.C. § 1395oo(f)(1).

## COUNT I
## Violations of the Medicare Statute—DGME Payments

55.    Plaintiffs reallege and incorporate by reference paragraphs 1–54 as if fully set forth below.

56.    The applicable provisions of the APA provide that the "reviewing court shall . . . hold unlawful and set aside agency action . . . found to be . . . not in accordance with law [or] in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.  5 U.S.C. § 706(2).

57.    The Secretary's regulation implementing the FTE cap and weighting factors is contrary to the Medicare statute because it determines the cap after applying the weighting factors. 42 U.S.C. § 1395ww(h)(4)(F)(i).  The effect of the Secretary's unlawful regulation is to impose

20

on Plaintiffs weighting factors that result in reductions greater than 0.5 for many residents who are beyond the IRP, and the regulation prevents Plaintiffs from claiming and receiving reimbursement for their full unweighted FTE caps.   42 C.F.R. § 413.79(c)(2)(iii).   Thus, the Secretary's calculations of Plaintiffs' current-year, prior-year, and penultimate-year weighted DGME FTEs and the FTE caps are contrary to the statutory provision at 42 U.S.C. § 1395ww(h), and, as a result, Plaintiffs' DGME payments are unlawfully understated.

58.     The Secretary's regulation at 42 C.F.R. § 413.79(c)(2)(iii) is contrary to the Medicare statute.   First, the regulation creates a weighted 1996 FTE cap.   The statute plainly requires the Secretary to determine the 1996 FTE cap "before application of weighting factors," which is an unweighted cap.   42 U.S.C. § 1395ww(h)(4)(F)(i).   Thus, the Secretary lacked the discretion to interpret the statute or deviate from its plain meaning.   The Secretary's regulation, however, instead applies a weighted FTE cap for the current year that is based on the ratio of the 1996 unweighted FTE count to the current year unweighted FTE count.   The Secretary concedes that the regulation results in "the hospital's reduced cap," which is less than the 1996 FTE cap. FY 2002 IPPS Rule, 66 Fed. Reg. at 39,894.   The Secretary applies this weighted FTE cap as an absolute limit on the number of FTEs that can be included in a hospital's DGME payment calculation.   This weighted FTE cap is applied *after* applying the weighting factors to residents who are beyond the IRP in the current year, which violates Congress's directive to determine the cap *before* applying those weighting factors.   42 U.S.C. § 1395ww(h)(4)(F)(i).

59.     Second, the Secretary's weighted FTE cap prevented Plaintiffs from ever reaching their 1996 unweighted FTE caps simply because they train fellows beyond their IRPs.   In fact, the Secretary's regulation prevents any hospital that trains fellows beyond the IRP from reaching its 1996 FTE cap. The downward impact on the FTE count increases as a hospital trains more

residents who are beyond the IRP.

60.     The following example illustrates the unlawful impact of the Secretary's regulation. The example compares the application of 42 C.F.R. § 413.79(c)(2)(iii) to FTE statistics for Strong Memorial Hospital during its fiscal year ending June 30, 2015 ("FY 2015") and a hypothetical Hospital A that has the same 1996  FTE cap as Strong Memorial Hospital and the same count of residents within its IRPs as Strong Memorial Hospital.   The only difference between the two hospitals is that Strong Memorial Hospital trained fellows beyond the IRPs:

|  | Strong FY 2015 | Hospital A |
|---|---|---|
| 1996 Unweighted FTE Cap (UCap) | 229.26 | 229.26 |
| Current Year Unweighted resident FTEs | 236.19 | 236.19 |
| Current Year Unweighted fellow FTEs | 67.82 | 0.00 |
| Current Year Total unweighted FTEs (UFTE) | 304.01 | 236.19 |
| Current Year Total weighted FTEs before application of cap (WFTE) | 270.10 | 236.19 |
| Current Year Total weighted FTEs after application of cap (WCap) | 203.68 | 229.26 |

The Secretary's formula at 42 C.F.R § 413.79(c)(2)(iii) results in weighted FTE caps of 203.68 for Strong Memorial Hospital and 229.26 for Hospital A:

- 42 C.F.R. § 413.79(c)(2)(iii) formula:

    (1996 FTE Cap)/(Unweighted FTEs) x Weighted FTEs = Weighted FTE Cap

- 42 C.F.R. § 413.79(c)(2)(iii) applied to Strong Memorial Hospital:

    229.26/304.01 x 270.10 = **203.68**

- 42 C.F.R. § 413.79(c)(2)(iii) applied to Hospital A:

    229.26/236.19 x 236.19 = **229.26**

61.     The Secretary's regulation at 42 C.F.R. § 413.79(c)(2)(iii) results in very different payments for Strong Memorial Hospital and Hospital A.  Because Hospital A does not train fellows beyond their IRPs, it receives a DGME payment based on its full 1996 FTE cap of 229.26 FTEs, even though its weighted FTEs are *lower* than Strong Memorial Hospital's weighted FTEs.

Hospital A would be paid for 25.58 FTEs *more* than Strong Memorial Hospital, even though their FTE caps are identical, and Hospital A trained 33.91 *fewer* weighted FTEs (before application of weighted cap) than Strong Memorial Hospital.

62.     The Secretary's regulation results in Strong Memorial Hospital receiving far less reimbursement than hypothetical Hospital A simply because Strong Memorial Hospital trained 67.82 fellows in FY 2015.   Strong Memorial Hospital would receive far less reimbursement than Hospital A, even though it trained 67.82 more individuals than Hospital A trained.   The Medicare statute requires that these fellows be weighted at 0.5, and the statute also requires that Strong Memorial Hospital is limited to its 1996 FTE cap of 229.26, but the Secretary has violated the statute by calculating an FTE count far below the 1996 FTE cap solely as a result of the Secretary's improper imposition of a weighted FTE cap.

63.     All Plaintiffs are similarly situated to Strong Memorial Hospital.   Each Plaintiff trained residents who were beyond their IRPs, and each Plaintiff trained a total number of residents that was higher than its unweighted 1996 FTE cap.   Each Plaintiff is prevented from receiving DGME payments based on its unweighted 1996 FTE cap due to the Secretary's unlawful regulation.

64.     All Plaintiffs suffered a downward payment adjustment that is greater than may be imposed by the statutory 0.5 weighting factor for training residents beyond the IRP.

65.     By establishing the cap based on the hospital's unweighted FTE count for 1996, Congress entitled Plaintiffs to claim FTEs up to that cap.   The Secretary's regulation renders this impossible because Plaintiffs trained residents who are beyond the IRP.   The regulation at 42 C.F.R. § 413.79(c)(2)(iii) is contrary to the Medicare statute at 42 U.S.C. § 1395ww(h) and is, therefore, invalid and must be set aside under the APA.

## COUNT II
## Arbitrary and Capricious Agency Action—DGME Payments

66.     Plaintiffs reallege and incorporate by reference paragraphs 1–65 as if fully set forth below.

67.     The applicable provisions of the APA provide that the "reviewing court shall . . . hold unlawful and set aside agency action . . . found to be . . . arbitrary [and] capricious [or] an abuse of discretion."  5 U.S.C. § 706(2).

68.     The regulation at 42 C.F.R. § 413.79(c)(2)(iii) is arbitrary and capricious and an abuse of discretion and is, therefore, invalid.  5 U.S.C. § 706(2).  By establishing a cap on FTEs, Congress intended that hospitals be paid based on that cap.  The Secretary's regulation prevents Plaintiffs from reaching their FTE caps and improperly treats similarly situated hospitals differently because hospitals with identical 1996 FTE caps and that have unweighted FTE counts equal to their caps, will receive very different payments.  When promulgating the regulation at 42 C.F.R. § 413.79(c)(2)(ii)-(iii), the Secretary wholly failed to justify this differing treatment.  *See Burlington N. and Santa Fe Ry. Co. v. Surface Transp. Bd.*, 403 F.3d 771, 776–77 (D.C. Cir. 2005).  The Secretary did not even acknowledge that its regulation would have such an inequitable effect.  FY 1998 IPPS Rule, 63 Fed. Reg. at 26,330.  Because the Secretary relied on factors that Congress has not intended him to consider and "entirely failed to consider an important aspect of the problem," the regulation is "arbitrary and capricious," as well as an abuse of discretion, and must be set aside under the APA.  *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

## RELIEF REQUESTED

**WHEREFORE**, Plaintiffs respectfully request an Order:

1.    Declaring that the Secretary's regulation at 42 C.F.R. § 413.79(c)(2)(iii) is arbitrary, capricious, an abuse of discretion, and contrary to statutory law, and is therefore invalid;

2.    Declaring that 42 U.S.C. § 1395ww(h) forbids the Secretary from imposing a weighted FTE cap;

3.    Declaring that the Secretary must apply FTE weighting factors after applying the unweighted FTE cap as required by 42 U.S.C. § 1395ww(h);

4.    Requiring the Secretary to recalculate Plaintiffs' DGME payments consistent with the Medicare statute so that the Plaintiffs' FTE counts are weighted for residents beyond the IRP at 0.5 and are capped based on the number of residents trained in the most recent cost reporting periods ending on or before December 31, 1996;

5.    Requiring the Secretary to pay Plaintiffs interest on the payments resulting from the Court's orders, pursuant to 42 U.S.C. § 1395oo(f)(2);

6.    Awarding Plaintiffs their costs and fees incurred in this litigation to the extent permitted by law; and,

7.    Granting such other relief in law and/or equity as this Court may deem just and proper.

Dated: <u>December 2, 2020</u>                Respectfully submitted,

*/s/ Leslie Demaree Goldsmith*
Leslie Demaree Goldsmith (DC Bar #422759)
BAKER DONELSON BEARMAN
  CALDWELL & BERKOWITZ, PC
100 Light Street
Baltimore Maryland 21202
Tel. (410) 862-1133
Fax (443) 263-7533
lgoldsmith@bakerdonelson.com

Thomas H. Barnard (DC Bar # 1615498)

BAKER DONELSON BEARMAN
  CALDWELL & BERKOWITZ, PC
100 Light Street
Baltimore, Maryland 21202
Phone: (410) 862-1185
Fax: (443) 263-7585
tbarnard@bakerdonelson.com

*Attorneys for Plaintiffs*